UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMEL FARMER,

    Plaintiff,

v.                                     CAUSE NO. 3:22-CV-149-DRL-MGG

HYATTE *et al.*,

    Defendants.

OPINION AND ORDER

Jamel Farmer, a prisoner without a lawyer, filed an amended complaint.[1] ECF 23. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Farmer's amended complaint centers around the conditions he faced while in administrative segregation at Miami Correctional Facility at the end of 2020. He alleges that when he first arrived in cell A-141, he noted how filthy the entire unit and his cell were. ECF 23-3 at 2. He says his cell contained an excessive amount of dirt, it smelled of

---

[1] The amended complaint arrived with the pages of the complaint out of order. The clerk docketed the pages in the order they arrived, but for the parties' convenience reordered them and docketed them in ECF 23-3 in the proper order. Here, the court cites to the reordered amended complaint.

urine, and the walls were smudged with an unknown black substance. *Id.* He alleges he immediately asked Sergeant LaPoint for cleaning supplies, which were especially important to him because he is Muslim and cannot properly pray in such an unclean environment. *Id.* But, he continues, Sergeant LaPoint denied him cleaning supplies, telling him that he should have chosen a God that wasn't so picky. *Id.*

According to the complaint, the sanitation problem only got worse. Mr. Farmer alleges that inmates in the cells above him flooded their toilets, and the resulting mess made its way into his cell. ECF 23-3 at 2-3. He asserts that Sergeant LaPoint again denied him the ability to clean the feces and other waste that entered his cell. *Id.* at 3. Mr. Farmer alleges he complained daily for weeks to Sergeant LaPoint, Sergeant Brandi, and others who were not named as defendants about not being able to clean his cell, but no one helped him. *Id.* He says he told them that the dirty cell prevented him from being able to pray because his Muslim faith requires him to pray in a clean environment. *Id.*

Mr. Farmer further complains that the situation in his cell was made worse by the conditions in the neighboring cell. ECF 23-3 at 4. His neighbor allegedly flooded his cell and was not allowed to clean up the resulting human waste. *Id.* The waste spread to Mr. Farmer's cell; the water eventually dried, leaving hardened waste behind. *Id.* In addition, Mr. Farmer complains that the waste in his neighbor's cell attracted bugs, which Mr. Farmer identifies as gnats and roaches, that spread to Mr. Farmer's cell. *Id.* at 4-5. Mr. Farmer alleges that he was repeatedly bitten by those insects, leading to scratch marks and rashes all over his legs and arms. *Id.* at 5. The infestation allegedly got worse after his neighbor died and was left in the cell overnight. *Id.*

Over the next week, Mr. Farmer alleges he told several correctional officers during walkthroughs that he needed cleaning supplies and personally showed them the condition of his cell. ECF 23-3 at 6-8. But those officers (Sergeant Martin, Officer Rubas, Lieutenant Durr, Captain Bayon, and Sergeant Brandi) did not take any action. *Id.* He says he went 65 days without cleaning supplies while housed in administrative segregation, and this uncleanliness denied him the ability to pray properly for two months. *Id.* at 8. He alleges that after weeks of exposure to the filth, he began getting sick, experiencing extreme headaches, vomiting, and a cough. *Id.* at 4.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "[A] court considering an Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. Even if no single condition of confinement would be unconstitutional in itself, exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment." *Rhodes v. Chapman*, 452 U.S. 337, 362–

3

63 (1981) (footnote, quotation marks, and citation omitted). Prolonged exposure to infestation can amount to an Eighth Amendment violation, *see Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015), and the combination of unhygienic conditions *and* failure to provide a way to clean states an Eighth Amendment claim, *see Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013).

On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the court of appeals has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference"). Mr. Farmer has plausibly alleged that the conditions in his cell rose to the level of a constitutional violation and states a claim against those officers who personally saw those conditions but, as alleged, did nothing.

Mr. Lampe also alleges those unclean conditions affected his ability to practice his religion. Prisoners have a right to exercise their religion under the free exercise clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Though correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic

concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Under these facts, any First Amendment claim Mr. Lampe might have would be co-extensive with the Eighth Amendment claim on which he is already proceeding. Though the measure of his damages may be influenced by the cell conditions being a religious imposition as well as a sanitation issue, proceeding on both a First and Eighth Amendment claim based on the same facts would be redundant. *Cf. Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017) (affirming dismissal of Eighth Amendment claim because the same facts comprised a more applicable First Amendment claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels").

Nor can Mr. Lampe proceed under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005). RLUIPA permits only injunctive relief against state officials, not money damages. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Mr. Lampe is no longer in administrative segregation, so is no longer subject to the conditions complained of in the complaint.

Finally, Mr. Farmer does not state a claim against Warden Hyatte or Lieutenant Robinson. Lieutenant Robinson is not mentioned at all in the body of the complaint, and the only reference to the warden occurs when Mr. Farmer alleges he sent the warden a

request form explaining the situation but the warden never replied. ECF 23-2 at 3. This one unanswered request form is insufficient to establish that Warden Hyatt had the personal involvement necessary to be held individually liable for the conditions of Mr. Farmer's cell. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (personal involvement is necessary for individual liability under 42 U.S.C. § 1983). The warden's and the lieutenant's positions overseeing the prison does not make them automatically liable for the actions or inactions of their subordinates. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, Warden Hyatt and Lieutenant Robinson must be dismissed.

For these reasons, the court:

(1) GRANTS Jamel Farmer leave to proceed against Sergeant Martin, Sergeant LaPoint, Captain Bayon, Officer Rubas, Lieutenant Durr, and Sergeant Branady (a/k/a Sergeant Brandi) in their individual capacities for compensatory and punitive damages for holding him in an unsanitary cell in Administrative Segregation at Miami Correctional Facility without providing cleaning supplies at the end of 2020 in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Hyatte and Robinson;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate

and serve process on) Sergeant Martin, Sergeant LaPoint, Captain Bayon, Officer Rubas, Lieutenant Durr, and Sergeant Branady (a/k/a Sergeant Brandi) at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 23);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sergeant Martin, Sergeant LaPoint, Captain Bayon, Officer Rubas, Lieutenant Durr, and Sergeant Branady (a/k/a Sergeant Brandi) to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

January 3, 2023                                      *s/ Damon R. Leichty*
                                                     Judge, United States District Court